UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STABILIS FUND II, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-0283-B |
| | § | |
| COMPASS BANK, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Compass Bank's (Compass)motion to dismiss. Doc. 52. For

the reasons below, the Court **GRANTS** in part and **DENIES** in part Compass's motion.

## I.

## BACKGROUND[1]

This case arises from Plaintiff Stabilis Fund II, LLC's (Stabilis) purchase of a defaulted

commercial loan (the Kaura Loan) from Compass. Doc. 49, Am. Compl., ¶ 1. On March 14, 2013,

Stabilis and Compass entered into a loan sale agreement (LSA) in which Stabilis purchased all rights

to a $4,050,000 loan Compass made the Kauras. *Id.* ¶ 47. But Stabilis claims that before it purchased

the loan, the Kauras and Compass entered into a loan modification agreement (LMA) that

"materially undermined the value of the loan." *Id.* ¶ 3. Stabilis claims that although it conducted due

diligence prior to purchase, it was unable to uncover the LMA because Compass concealed the

_____

[1]The Court draws its factual history from the parties' pleadings. Any contested fact is identified as
the contention of a particular party.

LMA. *Id.* Stabilis claims that had it known of the LMA, it would not have purchased the Kaura Loan. *Id.* ¶ 6.

Shortly after Stabilis purchased the Kaura Loan, the Kauras filed suit in California (the California Action) against Compass for breach of the LMA, fraud, negligent misrepresentation, and declaratory relief. *Id.* ¶ 48. Pursuant to the indemnification provision in the LSA, Stabilis provided defense for Compass in the California Action. *Id.* ¶ 51. Stabilis contends that throughout the California Action Compass's counsel continually made misrepresentations to Stabilis that no loan modification existed. *Id.* ¶ 53. Compass's counsel later conceded that a loan modification agreement had been drafted but allegedly continued to deny that an agreement was ever signed or in their possession. *Id.* ¶¶ 54–55. In September 2014, Compass's outside counsel produced the LMA—fully executed on December 16, 2011—in response to a subpoena served in the California Action. *Id.* ¶ 67. On June 8, 2017, the California Action concluded in a jury verdict for Compass. *Id.*

On September 22, 2017, Stabilis sued Compass in New York state court. Doc. 1, Notice of Removal, ¶ 1. Compass timely removed the suit to the Southern District of New York. Id. 5. And in February 2018 the Southern District of New York transferred the case to this Court. Doc. 24, Order. Stabilis then filed an amended complaint alleging claims for fraudulent inducement, fraudulent concealment, and unjust enrichment based on Compass's alleged misrepresentations and concealment of the LMA. *See* Doc. 49, Am. Compl. Compass filed a motion to dismiss Stabilis's amended complaint, Doc. 52, which is ripe for review.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged — but it has not shown — that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

Rule 9(b) elevates the federal rules' liberal pleading standards and requires plaintiffs to plead fraud claims with particularity. The Fifth Circuit requires plaintiffs alleging fraud to allege the "time,

place, and contents of the false representations, as well as the identity of the person making the representation and what the person obtained thereby." *Tuchman v. DSC Comm. Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (citations omitted); *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1994). Motions to dismiss under Rule 9(b) receive the same treatment as motions for dismissal pursuant to Rule 12(b)(6). *See Shushany v. Allwaste, Inc.*, 992 F.3d 517, 520 (5th Cir. 1993) ("A dismissal for failure to state fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim.").

## III.

## ANALYSIS

A.    *Fraud Claims*

Compass argues that Stabilis failed to state a fraudulent inducement or fraudulent concealment claim and that Stabilis's fraud claims are barred by the four year statute of limitations. Doc. 52, Def.'s Mot. to Dismiss, 22–25. The Court addresses the statute-of-limitations argument first.

1.    Statute of Limitations

In Texas, the statute of limitations for fraud claims is four years. Tex. Civ. Prac. & Rem. Code § 16.004(a)(4). Stabilis filed its original complaint on September 22, 2017. *See* Doc. 1-1, Summons. Thus, the statute of limitations bars any claim for fraud that accrued before September 22, 2013.

Compass argues that Stabilis's claims accrued when it signed the LSA on March 13, 2013 because the LSA provided notice of the LMA. Doc. 52, Def.'s Mot. to Dismiss, 24. Alternatively, Compass argues that Stabilis's claims accrued on August 27, 2013 when it received an executed memorandum of a loan modification agreement from the Kauras' counsel, or on August 30, 2013,

when Stabilis's counsel wrote to Compass that the memorandum was "disconcerting to say the least" and "reserv[ed] all rights under the Loan Sale Agreement and applicable law." *Id*. at 24. Stabilis contends that it did not have knowledge of the fully-executed, signed, and notarized LMA until the document was subpoenaed in September 2014, Doc. 49, Am. Compl., ¶¶ 67–68, and that the limitations period began to run at that time, Doc. 58, Resp., 23.

Generally, "[a] cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4, (Tex. 1996)). But the date of accrual is tolled if the discovery rule applies. *Id*. at 357. And Stabilis contends that the discovery rule applies in this case. Doc. 58, Resp., 23–24.

The discovery rule tolls accrual until "the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). The Texas Supreme Court has provided seemingly conflicting guidance on application of the discovery rule. On one hand, the Court has instructed that the discovery rule applies only when "the nature of the injury [is] inherently undiscoverable and []the injury itself [is] objectively verifiable." *HECI Exploration Co.*, 982, S.W.2d at 886. Whether an injury is inherently undiscoverable is a categorical determination based on the type of injury, not the particular injury at issue. *Id*. Based on this reasoning, the Fifth Circuit has found that "whether the discovery rule applies to a particular cause of action is a question of law." *TIG Ins. Co.*, 521 F.3d at 357.

On the other hand, the Texas Supreme Court has noted that although the date of accrual is normally a question of law, reasonable diligence is normally a question of fact. *Hooks v. Samson*

*Lone Star, LP*, 457 S.W.3d 52, 57–58 (Tex. 2015). And although the Texas Supreme Court has urged courts to take a categorical approach, it has also found that "discovery of a particular injury is dependent not solely on the nature of the injury but on the circumstances in which it occurred and plaintiff's diligence as well." *S.V.*, 933 S.W.2d at 7. Thus, courts have found it inappropriate to analyze the discovery rule at the motion to dismiss stage. *See USPPS, Ltd. v. Avery Dennison Corp.*, 326 F. App'x 842, 850 (5th Cir. 2009) (noting that many of the cases in which the Texas Supreme Court found the discovery rule inapplicable were decided during summary judgment and finding that it was "too difficult at the dismissal state to say that the fact of misconduct should have been known so early as to bar the actions here"); *Samaratunga Family Tr. v. Am. Tower, Inc.*, A-17-CV-097-LY, 2017 WL 2274491, at *5 (W.D. Tex. May 24, 2017).

Regardless, "dismissal at the 12(b)(6) stage is proper only where it is evident from the complaint that the action is barred and the complaint fails to raise some basis for tolling." *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 351 (5th Cir. 2011) (internal quotations and alterations omitted). Indeed, "[f]or dismissal based on limitations to be proper, the complaint itself must show that the statute of limitations has run." *Samaratunga Family Tr.*, 2017 WL 2274491 at *5. The defendant must establish the statute-of-limitations defense. *Jaso*, 435 F. App'x at 351.

Compass has not met its burden. Compass has provided the Court with no cases in which a court discussed whether alleged concealment of a loan-modification agreement is the type of injury that is inherently undiscoverable. *See Hooks*, 457 S.W.3d at 59 (declining to find the discovery rule inapplicable because the court had "not previously considered whether reasonable diligence would uncover" the type of information allegedly fraudulently concealed). And although Compass argues that Stabilis failed to exercise reasonable diligence, the Court must accept as true Stabilis's

allegations that it was reasonably diligent in pursuing whether a loan-modification agreement existed. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

Stabilis pleads that it exercised due diligence before it agreed to purchase the Kaura loan. Doc. 49, Am. Compl., ¶¶ 3, 32–33. And it pleads that even with its due diligence it could not have discovered the LMA because Compass falsely represented that it had disclosed all loan documents. *Id.* ¶¶ 33–34. For example, Stabilis pleads that its counsel asked Compass's counsel why it refused to include a representation in the LSA that it had not modified any loan documents and Compass's counsel responded that Compass simply never agreed to alter its contracts and had nothing to hide. *Id.* ¶ 38. Stabilis contends that it has "completed hundreds of transactions with various sellers," *id.* ¶ 28, but has never encountered a situation "where a bank selling a loan failed to disclose a fully executed document that pertained to and modified . . . the terms of the loan," and thus had no reason to think Compass's representations were false, *id.* ¶ 39.

And Stabilis pleads that during the California Action it exercised reasonable diligence by repeatedly asking Compass about the LMA . *Id.* ¶ 52. But, it claims that even after exercising reasonable diligence it could not have known of Compass's alleged fraud because Compass represented first that no loan modification agreement existed, then that the agreement was discussed but never drafted, and finally that the agreement was drafted but never signed. *Id.* ¶¶ 53–55. Thus, it is not clear from the face of the complaint that the statute of limitations bars Stabilis's fraud claims, and Stabilis has pleaded allegations that provide some basis for tolling. So the Court declines to find at this stage in the case that the statute of limitations bars Stabilis's claims.

### 2. Fraudulent Inducement Claim

Compass argues that Stabilis fails to state a fraudulent-inducement claim because (1) the

LSA disclosed the LMA, (2) Compass had no duty to disclose the LMA, (3) the disclaimer-of-reliance and release provisions in the LSA bar Stabilis's claim, and (4) the as-is provision in the LSA negates causation between Compass's representations and Stabilis's alleged injury. Doc. 52, Mot. to Dismiss, 9–15. The Court will consider each argument in turn.

i.      *Disclosure of the LMA*

First, Compass argues that Stabilis cannot state a claim that Compass misrepresented the existence of the LMA because Compass adequately disclosed the LMA in the LSA. Doc. 52, Mot. to Dismiss, 9–10. Compass attached to the LSA a notice it sent the Kauras in February 2013 that told the Kauras the December 2011 LMA was void and ineffective because the Kauras failed to provide authority to sign the document on behalf of an entity they claimed to own. Doc. 54, Def.'s App., 26, 39. Stabilis claims the notice alerted it that the Kauras and Compass had discussed a loan modification agreement but did not indicate that the Kauras and Compass had a fully signed, executed agreement. Doc. 49, Am. Compl., ¶¶ 42–44. Compass counters that "no reasonable person, and certainly no sophisticated New York investment fund" could read the notice as indicating anything other than that the Kauras and Compass had a fully signed and executed agreement. Doc. 52, Mot. to Dismiss, 10.

But the notice does not say that the LMA was fully signed and executed. *See* Doc. 54, Def.'s App., 39. And Stabilis claims that it "is common in the banking and finance industry for a lender to discuss a possible loan modification for a borrower in default, and then to terminate such discussions with a letter like [the notice], when no agreement had ever been reached." Doc. 49, Am. Compl., ¶ 44. Thus, the Court finds that the notice to the Kauras does not foreclose Stabilis's fraudulent-inducement claim.

*ii.*      *Duty to Disclose*

Second, Compass argues that it had no duty to disclose the LMA. Doc. 52, Mot. to Dismiss, 11–12. It contends the LSA absolved it of any duty and that it did not have a duty to disclose independent of the contract. *Id*. Stabilis argues that the LSA provision on which Compass relies does not support its position and that Compass had a common-law duty to make a full disclosure of all loan documents because the notice's partial disclosure of the LMA gave the false impression the Kauras and Compass had discussed but had not executed the LMA. Doc. 58, Resp., 12–14.

To state a fraudulent-inducement claim based on nondisclosure, Stabilis must allege that Compass "concealed or failed to disclose a material fact that [Compass] knew [Stabilis] was ignorant of or did not have the opportunity to discover, that [Compass] intended to induce [Stabilis] to take some action by concealing or failing to disclose the material fact, and that [Stabilis] suffered as a result." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008). But for there to be fraud by nondisclosure, there must be a duty to disclose. *Id*. Generally, a duty to disclose arises only when there is a fiduciary or confidential relationship between the parties. *Ins. Co. of Am. v. Morris*, 981, S.W.2d 667, 674 (Tex. 1998). But Texas courts have recognized a duty to disclose in arms-length transactions in three situations. *Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*, No. 3:08-cv-0102-B, 2008 WL 3925272, at \*12 (N.D. Tex. Aug. 27, 2008). Relevant here, a duty to disclose arises "when one makes a partial disclosure and conveys a false impression." *Id*. (quoting *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Co.*, 217 S.W.3d 653, 671 (Tex. App.—Houston [14th Dist.] Dec. 12, 2006, pet. denied)). Then, that person has a duty to make a full disclosure to correct the false impression. *Id*.

Based on Stabilis's pleadings, the Court agrees that Compass had a duty to disclose the LMA

because its disclosure of the notice to the Kauras gave the false impression that there was no executed LMA. Stabilis pleaded that the notice gave the impression that the Kauras and Compass had negotiated a loan modification but that no agreement had been reached. Doc. 49, Am. Compl., 44. But in fact, the LMA was fully executed. *Id.* ¶ 3. Thus, Compass had a duty to fully disclose the status of the loan by including the LMA in the LSA.

Compass argues that regardless of a common-law duty to disclose, Stabilis agreed in the LSA that Compass did not have to provide all documents material to the Kaura Loan. Doc. 52, Mot. to Dismiss, 11–12. The LSA contains an "Excluded Documents" provision that states that the buyer acknowledges "certain documents concerning the Loan Rights are not included in the Loan Documents" and that these excluded documents "could have a material influence" on the value, merits, risks, and hazards of the loan. Doc. 54, LSA, § 2.01(k). The provision provides that "Buyer shall not request or be provided access to any of the Excluded Documents," and that "[i]n no event shall Buyer at anytime be entitled to review or have access to Seller's assessments of the Loan and the Real Property, attorney-client privileged materials, and internal communications or strategies of Seller for the loan." *Id.*

Stabilis argues that the Excluded Documents provision does not bar its fraudulent-inducement claim because that provision "universally refers to either attorney-client communications or to proprietary internal documents the seller has prepared, such as the bank's underwriting file." Doc. 49, Am. Compl., ¶ 40. Thus, it argues the LMA is not an excluded document within the meaning of that provision. Because the language of the provision does not make clear as a matter of law that the LMA is within the scope of "excluded documents," the Court finds that this provision does not bar Stabilis's claims.

Next, Compass claims that the disclaimer-of-reliance provision in the LSA bars Stabilis's fraudulent-inducement claim.[2] Doc. 52, Mot. to Dismiss, 12–14. The disclaimer-of-reliance provision states in relevant part that "Buyer has relied and shall rely solely on its own investigation and . . . Buyer has not relied and will not rely upon any oral or written statements or representations by Seller." Doc. 54, LSA, § 302(d). Compass argues that because Stabilis agreed it would rely only on information obtained through its own due diligence rather than representations made by Compass, Stabilis could not justifiably rely on any of Compass's extra-contractual statements that the LMA did not exist. Doc. 52, Mot. to Dismiss 12–14. Stabilis argues that the circumstances surrounding formation and execution of the LSA render the disclaimer-of-reliance provision unenforceable. Doc. 58, Resp., 14–16.

To state a fraudulent-inducement claim based on affirmative misrepresentations, Stabilis must allege that "(1) [Compass] 'made a material representation that was false'; (2) [Compass] 'knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth'; (3) [Compass] intended to induce [Stabilis] to act upon the representation; and (4) [Stabilis] actually and justifiably relied upon the representation and suffered injury as a result. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (quoting *Ernst & Young, L.L.C. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

---

[2] Compass also argues that the release provision in the LSA bars Stabilis's claim. *Id.* The release provision provides that Stabilis releases Compass from "any and all claims . . . founded either in tort, contract or otherwise . . . except those arising under this Agreement." Doc. 54, LSA § 601(a). Because Stabilis's claim that Compass fraudulently induced it into signing the LSA by concealing the LMA plainly arises under the LSA, the release provision does not bar Stabilis's claim.

Under Texas law, contracting parties may include provisions that disclaim reliance, negating the fourth element of a fraudulent-inducement claim. *Forest Oil v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181(Tex. 1997). To determine whether a disclaimer-of-reliance provision is binding, courts must consider the totality of the circumstances. *Schlumberger*, 959 S.W.2d at 179–80. "The Texas Supreme Court has found a clear and specific intent to disclaim reliance when 'sophisticated parties, represented by competent legal counsel, included an emphatic particularized disclaimer of reliance in the contract.'" *Prime Income Asset Mgmt. Inc. v. One Dall. Ctr. Assocs. LP*, 358 F. App'x. 569, 572 (5th Cir. 2009) (quoting *Schlumberger*, 959 S.W.2d at 180). The Texas Supreme Court clarified that its holding in *Schlumberger* was based on consideration of the following factors:

> (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other in an arm's length transaction; (4) the parties were knowledgeable in business matters; and (5) the release language was clear.

*Forest Oil Corp.*, 268 S.W.3d at 60.

The Court finds all of the *Forest Oil* factors weigh in favor of enforcing the disclaimer-of-reliance provision in the LSA. Stabilis does not dispute that factors two through five weigh in favor of enforcing the provision. Doc. 58, Resp., 15–16. But Stabilis argues that Compass cannot meet factor one because the contract contained boilerplate language that Compass refused to negotiate, and because the parties never negotiated concealment of a signed loan modification—the issue of the parties' dispute. Doc. 58, Resp., 15.

The Court disagrees with Stabilis. The negotiation inquiry focuses not on whether a party

agreed to proposed changes but whether the party claiming fraudulent inducement had the ability to negotiate. *See Forest Oil*, 268 S.W.3d at 58 ("[W]hen knowledgeable parties expressly discuss material issues during contract negotiations but nevertheless elect to include waiver-of-reliance and release-of-claims provisions, the Court will generally uphold the contract."). Stabilis pleads that it "has considerable experience in managing, restructuring, servicing and collecting commercial loans similar to the Kaura Loan," Doc. 49, Am. Compl., ¶ 8, and that it has "completed hundreds of transactions with various sellers," *id*. ¶ 28. And it pleads that Joseph Tuso, its in-house counsel, asked Compass to include in the LSA "some additional 'boilerplate' representations . . . including a representation that the Bank had not modified the loan documents." *Id*. ¶ 37.[3] Tuso also asked Compass to include a fraud carve out in the release provision of the LSA. Doc. 54-2, Def.'s App., 680.[4] Stabilis agreed to sign the LSA even though Compass refused to incorporate Tuso's proposed changes. Doc 49. Am. Compl., ¶ 38.

And although the parties may not have addressed concealment of a loan modification agreement, the law does not define the "topic of the subsequent dispute" so narrowly. *See Schlumberger*, 959 S.W.2d at 174, 180 (finding a disclaimer-of-reliance provision in a settlement agreement barred the respondents' claim that Schlumberger fraudulently induced them into selling their interest in a diamond mining project because "the commercial feasibility and value" of the project was the "very dispute" the settlement agreement resolved). Rather, courts consider whether the parties contemplated the type of dispute at issue when forming the relevant contract. *See Forest*

---

[3] Paragraphs 8, 28, and 37 of Stabilis's amended complaint also demonstrate that the second through fourth *Forest Oil* factors weigh in favor of upholding the disclaimer-of-reliance provisions.

[4] Because Stabilis referenced Tuso's requested changes to the LSA in its complaint, the Court may consider Tuso's email requesting the changes. *See Dorsey*, 540 F.3d at 338.

*Oil*, 268 S.W.3d at 59 (rejecting argument that disclaimer-of-reliance provision in a contract settling a mineral development suit did not apply to parties' subsequent environmental-injury suit because the settlement agreement contained a provision requiring arbitration of environmental claims); *cf. Baker v. City of Robinson*, 305 S.W.3d 783, 796 (Tex. App.—Waco 2009, pet. denied) (finding disclaimer-of-reliance provision in nursing-home purchase agreement did not bar claim that the city misrepresented zoning of the nursing home in part because "there [was] nothing in the record to indicate the parties discussed zoning of the property before the City prepared the contract").

Here, Stabilis claims that Compass fraudulently induced it into purchasing the Kaura Loan by misrepresenting the value of the loan. Doc. 49, Am. Compl., ¶ 1. The LSA governs Stabilis's rights and interests in the loan as well as Compass's liability for representations of the value of the loan. *See e.g.* Doc. 54, LSA, §§ 2.01 (a), 3.01 (d). Thus, not only do Tuso's proposed changes indicate that Stabilis contemplated that suits involving fraud and modification of the loan documents might arise from the LSA, the subject matter of the LSA concerns the "very dispute" at issue. Thus, because the disclaimer-of-reliance provision forecloses Stabilis's fraudulent-inducement claim based on Compass's extra-contractual misrepresentations, the Court **DISMISSES with prejudice** those claims.[5]

*iv.    As-is provision*

Finally, Compass claims that Stabilis's fraudulent inducement claim is barred because Stabilis agreed to accept the loan "as is and with all faults . . . and without any representation or warranty." Doc. 52, Mot. to Dismiss, 14–15; Doc. 54, LSA § 2.01 (g). Thus, it contends that the "sole cause of

---

[5]The Court notes that this analysis does not apply to Stabilis's fraudulent-inducement claim premised on nondisclosure of the LMA in the LSA.

[the] buyer's injury is the buyer himself." Doc. 52, Mot. to Dismiss, 15 (quoting *Prudential Ins. Co. of Am v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1993). Stabilis argues that "'as-is' provisions do not negate causation with respect to claims for fraudulent inducement based on misrepresentations or concealment." Doc. 58, Resp., 17.

The Court agrees with Stabilis. *Prudential Insurance*, which Compass claims "wholly supports its argument," Doc. 65, Reply, 6, found that an as-is provision barred the buyer's claim that the seller of an office building fraudulently concealed that the building contained asbestos, 896 S.W.2d at 158–59. The *Prudential Insurance* Court found that "[a] valid 'as-is' agreement . . . prevents a buyer from holding a seller liable if the thing sold turns out to be worth less than the price paid because it is impossible for the buyer's injury . . . to have been caused by the seller." *Id.* at 161. But key to the court's holding was that the as-is agreement in that case was valid. The court held that "[a] buyer is not bound by an agreement to purchase something 'as-is' that he is induced to make because of a fraudulent representation or concealment of information by the seller." *Id.* at 162. Indeed, "[a] seller cannot have it both ways: he cannot assure the buyer of the condition of a thing to obtain the buyer's agreement to purchase 'as-is,' and then disavow the assurance which procured the 'as-is' agreement." *Id.* Thus, because Stabilis claims that it was fraudulently induced into purchasing the Kaura Loan based on Compass's fraudulent concealment of the LMA, the as-is provision in the LSA does not bar its fraudulent-inducement claim.[6]

---

[6] The Court recognizes the somewhat incongruous result of finding the disclaimer-of-reliance provision bars Stabilis's claim but the as-is provision does not. And Texas courts have suggested both that fraudulent inducement makes voidable the entire contract, *see e.g.*, *Dall. Farm Mach. Co. v. Reaves*, 307 S.W.2d 233, 239–40 (Tex. 1957), and that as-is provisions are subject to *Forest-Oil*-like factors, *see Red River Aircraft Leasing, LLC, v. JetBrokers, Inc.*, No. 3:16-CV-2250-G, 2018 WL 2299054, at *4 (N.D. Tex. May 21, 2018). But neither party raises these arguments. So the Court declines to independently assess their merits and limits its reasoning to the arguments the parties briefed.

### 3. Fraudulent Concealment

The Court next addresses Stabilis's fraudulent-concealment claim. Stabilis alleges that Compass fraudulently concealed the LMA during the California Action so that Stabilis would continue to indemnify Compass. Doc. 49, Am. Compl., ¶ 57. Compass argues that Stabilis's fraudulent-concealment claim fails because (1) Stabilis's damages were not proximately caused by Compass, (2) Stabilis could not justifiably rely on Compass's representations because of "red flags" regarding the LMA, (3) Compass agreed in the LSA to cooperate with Stabilis in future litigation for only sixty days after the LSA closing date, and (4) Stabilis failed to plead its claim with particularity as required by Rule 9(b). Doc. 52, Mot. to Dismiss, 16–21.

Stabilis responds that it conducted sufficient due diligence to respond to "red flags" about the LMA, Compass's cooperation argument fails because the economic-loss doctrine does not control, and it has adequately pleaded its claim under Rule 9(b) by identifying the speaker, time frame, and misrepresentation. Doc. 58, Resp., 18–22. The Court will examine each argument in turn.

#### i. Causation

First, Compass argues that it did not cause Stabilis's alleged damages because those damages are "in fact precisely the risks that Stabilis agreed to bear in the Loan Sale Agreement." Doc. 52, Mot. to Dismiss, 17. It points to Stabilis's agreement in the LSA to assume Compass's liabilities, indemnify Compass in future litigation, and purchase the Loan without all material documents and "as-is." *Id.* It also reiterates that the LSA disclosed the LMA and that Stabilis requested a fraud carve-out and confirmation that Compass had not modified the loan documents but signed the LSA without its requested changes. *Id.* Stabilis does not respond except to the extent it addressed Compass's arguments with respect to its fraudulent-inducement claim.

The Court also addressed a large part of Compass's arguments with respect to Stabilis's fraudulent-inducement claim and refuses to rehash those arguments. *See supra* 8, 11–14. And Compass's argument that Stabilis's agreement to assume Compass's liabilities and indemnify it in future litigation bars Stabilis's fraudulent-concealment claim is minimal at best; Compass does no more than cite to the relevant LSA provision. *Id.* at 17. The Court declines to make Compass's argument for it and thus finds that the LSA provisions Compass cites do not bar Stabilis's fraudulent-concealment claim.

ii.     *Justifiable reliance*

Compass argues that the notice to the Kauras that the LMA was void and the fact that the Kauras filed suit based on the LMA were "red flags" negating the justifiable reliance element of a fraud claim. Doc. 52, Def.'s Mot. to Dismiss, 17–18. Stabilis responds that it investigated the alleged "red flags" and yet could not uncover the LMA. Doc. 58, Resp., 20.

As noted earlier in this Order, justifiable reliance is an element of a fraud claim. *See supra*, 11; *JPMorgan Chase Bank, N.A.* 546 S.W.3d at 653. The Texas Supreme Court instructed that

> In determining whether justifiable reliance is negated as a matter of law, courts must consider the nature of the parties' relationship and the contract. In an arm's-length transaction, the defrauded party must exercise ordinary care for the protection of his own interests. A failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party. And when a party fails to exercise such diligence, it is charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated. To this end, that party cannot blindly rely on a representation by a defendant where the plaintiff's knowledge, experience, and background warrant investigation into any representations before the plaintiff acts in reliance upon those representations.

546 S.W.3d at 654 (internal quotations, alternations, and citations omitted). Thus, a "red flag" does not preclude justifiable reliance per se; rather, if a sophisticated business entity encounters red flags,

it must undertake "additional investigation" in order to exercise reasonable diligence and avoid negation of justifiable reliance. *Id*. at 655. Although a court may determine justifiable reliance as a matter of law, reasonable diligence is generally an issue of fact. *Id*. at 654; *Hooks* 457 S.W.3d at 57–58.

Stabilis is a sophisticated business entity. *See* Doc. 49, Am. Compl., ¶¶ 8, 28. And it contends that it investigated the alleged "red flags." Doc. 58, Resp., 20. Thus, the Court must determine whether Stabilis adequately pleaded that it was reasonably diligent in its investigation. The Court undertook the same analysis in the statute-of-limitations section of this order and found that Stabilis adequately pleaded that it was reasonably diligent in pursing existence of the LMA but nevertheless could not uncover Compass's fraud. *See supra* 6–7. That finding applies here too. Stabilis's continued questioning of Compass about the LMA indicates that Stabilis did not blindly rely on Compass's representations. *See* Doc. 49, Am. Compl., ¶¶ 52–55. And because reasonable diligence is an issue of fact, the Court declines at the motion to dismiss stage to hold that Stabilis's continued questioning did not constitute reasonable diligence as a matter of law.

### iii. *Economic-Loss Doctrine*

Stabilis argues that Compass's agreement to cooperate in future litigation for only sixty days post closing does not bar its fraudulent-concealment claim because Compass's duty to disclose is independent of the LSA; thus the economic-loss doctrine does not apply. Doc. 58, Resp., 18. Compass replies that, because Stabilis claims only economic loss, its claim sounds in contract and the economic-loss doctrine bars Stabilis's claim. Doc. 65, Reply, 8–9.

The economic-loss doctrine bars a plaintiff from converting a contract action into a tort action. In determining whether a claim can be brought as a tort action, courts consider "the source

of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff." *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex.1996). If the defendant's duty arose independently of the fact that a contract exists between the parties, the plaintiff's claim is more likely to sound in tort. *Sw. Bell Tele. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex.1991). But if the remedy sought by the plaintiff is only the loss or damage to the subject matter of the contract, the plaintiff's action is ordinarily on the contract. *Id.* at 494.

But the Texas Supreme Court has found that, for fraudulent-inducement claims, the tort claim is not barred even if the plaintiff claims only economic loss. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (finding that as long as the plaintiff presented legally sufficient evidence of each element of fraudulent inducement, "any damages suffered as a result of the fraud sound in tort"). And although the *Formosa-Plastics* Court did not explicitly extend its holdings to all fraud claims, it couched its reasoning in terms of fraud in general. *Id.* at 46–47. Thus, the Court finds that the appropriate inquiry for a fraud claim, where the alleged fraud occurred in the context of a contract between the parties, focuses on the source of the duty allegedly violated. If the basis of the tort claim is a legal duty independent of the contract, the tort claim can stand, at least for the purposes of this 12(b)(6) motion. *See People's Choice Home Loan, Inc. v. Mora*, No. 3:06-CV-1709, 2007 WL 708872, at * 6 (N.D.Tex. Mar. 7, 2007) (refusing to dismiss negligence claim where plaintiff had alleged duty independent of contract); *Nazareth Int'l, Inc. v. J.C. Penney Corp., Inc.*, No. 3:04-CV-1265, 2005 WL 1704793, at *8 (N.D.Tex. Jul. 19, 2005) (refusing to dismiss fraud and negligence claims where plaintiff alleged facts to support a duty by defendant to correct its prior representations to plaintiff).

As the Court has noted, Texas courts have recognized a duty to disclose "when one makes a partial disclosure and conveys a false impression." *Highland Crusader Offshore Partners, L.P.*, 2008 WL 3925272, at *12 (quoting *Four Bros. Boat Works, Inc.*, 217 S.W.3d at 671). And the Court has found that Compass was subject to this common-law duty. *See supra*, 9–10. Thus, Compass had a duty to disclose the LMA that existed independent of its contractual obligation to cooperate in the California Action. So the economic-loss doctrine does not bar Stabilis's claim.

    *iv.    Pleading with particularity*

Compass claims that Stabilis fails to plead its claims with particularity because it makes only general allegations such as "in or about May, 2013" and fails to give the name of every Stabilis and Compass attorney whom it references in its complaint. Doc. 52, Mot. to Dismiss, 19–20. It also claims that Stabilis failed to plead Compass's motive for allegedly concealing the LMA, or that Compass knew its representations were false. *Id.* at 20–21. Stabilis responds that it has identified "specific individuals, misrepresentations made in detail and to whom they were made, specific time periods for each misrepresentation, how those misrepresentations were communicated to Stablis, and why those misrepresentations were untrue." Doc. 58, Resp., 21.

Under Rule 9(b), Stabilis is required to plead the time, place, and contents of alleged fraudulent statements. *See Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir.1992) ("At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.").

Stabilis's pleadings comply with Rule 9(b). Stabilis names specific attorneys for both parties who were involved in the discussions of the LMA during the California Action and provides the

month during which each discussion took place. Doc. 49, Am. Compl. ¶¶ 53–56. The Court refuses to find that Stabilis's pleadings fall below the Rule 9(b) standard just because Stabilis refers to its outside counsel as "lawyers with the law firm Reed Smith LLP," alleges that "Pahland and/or Moore" told Stabilis there was no signed LMA, and provides only the month during which these discussions took place rather than the particular day. Instead, the particulars of Stabilis's pleadings sufficiently dissuade the Court that Stabilis is attempting to file a baseless complaint in an attempt to fish for unknown wrongs. *See Sushany*, 992 F.2d at 521. And, although the Court doubts that Stabilis is required to allege Compass's motive, Stabilis has alleged motive as well as that Stabilis knew its representations were false. *See* Doc. 49, Am. Compl., ¶¶ 56, 76.

B.      *Unjust Enrichment*

Stabilis claims that Compass will be unjustly enriched if allowed to "retain the entire purchase price that Stabilis was fraudulently induced to pay and did pay as consideration for the Loan Sale Agreement." Doc. 49, Am. Compl, ¶ 101. Stabilis also claims that Compass was unjustly enriched by Stabilis's indemnification throughout the California Action. *Id*. ¶ 102. Compass responds that Stabilis's unjust-enrichment claim should be dismissed because "the subject matter of the claim is covered by an express contract." Doc. 52, Mot. to Dismiss, 22. And Compass argues that the unjust-enrichment claim is time-barred. *Id*. at 25. The Court does not address the statute-of-limitations argument because it agrees that the LSA precludes Stabilis's unjust-enrichment claim.

Unjust enrichment is a quasi-contractual claim based on the absence of an express agreement. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 672, 684 (Tex. 2000). The Court has previously determined that because the LSA governs Stabilis's rights and interests in the loan, the subject matter of the LSA concerns the "very dispute" at issue. *See supra*, 14. Thus, Stabilis's claim

for unjust enrichment is **DISMISSED with prejudice**.

IV.

CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Compass's motion to dismiss. Doc. 52. The Court **GRANTS** Compass's motion with respect to Stabilis's fraudulent-inducement claim based on extra-contractual representations and its claims for unjust enrichment. Those claims are **DISMISSED with prejudice**. The Court **DENIES** Compass's motion with respect to Stabilis's fraudulent-inducement claim based on nondisclosure in the LSA and Stabilis's fraudulent-concealment claim.

**SO ORDERED.**

**SIGNED: July 30, 2018**.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE