# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| STABILIS FUND II, LLC, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-0283-B |
| | § | |
| COMPASS BANK, | § | |
| | § | |
|    Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Compass Bank's Amended Motion for Summary Judgment (Doc. 187). The Court **GRANTS** Compass's Motion for Summary Judgment on Stabilis's fraudulent-inducement claim. However, the Court **DENIES** Compass's Motion for Summary Judgment on Stabilis's fraud based on fraudulent concealment claim and Compass's breach-of-contract counterclaim.

## I.

## BACKGROUND

A.    *Factual Background*[1]

This is a fraud and breach-of-contract case. In June of 2009, Zions First National Bank loaned $4.05 million to the Kaura Family Trust and Neil Kaura (the Kauras). Doc. 188, Def.'s Br., 3. The loan was secured by an apartment complex in Indio, California. *Id.* Zions then assigned the loan to BBVA Bancomer USA, which then merged with Compass, which became the holder of the

---

[1]Disputed facts are noted as such.

loan. *Id.*

In September of 2011, the Kauras defaulted on the loan. *Id.* at 4. In December of 2011, Compass and the Kauras entered into a Loan Modification Agreement (LMA) and a Memorandum of LMA. *Id.* Because the Kauras failed to comply with the conditions precedent to the LMA, however, the LMA became void and was not filed in the California property records. *Id.*

In January of 2013, Compass began to offer for sale a portfolio of loans, which included the Kaura loan, through a sealed bid process. *Id.* Compass's loan sale advisory, Mission Capital, conducted the process. *Id.* Mission gave to prospective bidders both an Asset Sale Overview and a Loan Sale Memorandum. *Id.* at 4–5.

Stabilis was the highest bidder for the Kaura loan, with a bid of $2,380,450, which was about 60% of the outstanding principal loan balance. *Id.* at 7. After negotiations back and forth between Compass and Stabilis's General Counsel, Joseph Tuso, they executed the Loan Sale Agreement (LSA) for the Kauras' loan effective on March 13, 2013. *Id.* at 7–8.

The LSA contains four provisions relevant to this Order. First, § 3.02(d) of the LSA contains a disclaimer-of-reliance clause, which states, in relevant part, "Buyer has relied and shall rely solely on its own investigation and other than Seller's representations and warranties in Section 3.01 of this Agreement, Buyer has not relied and will not rely upon any oral or written statements or representations by Seller or any of the Seller Parties." Doc. 189, Def.'s App., 69. Second, § 3.01 states,

> (a)   Seller is the owner of the Loan Rights, and Seller shall have the right on the Closing Date to assign the Loan Rights to Buyer, subject to the consent of any Participant.

(b)     As of the [sic] March 4, 2013, the unpaid principal balance of the Loan is $3,850,548.90.

(c)     To Seller's Knowledge, the Borrower does not have the right to disbursement of additional loan proceeds or future advances with respect to the Note or Loan Documents.

(d)     The Loan Documents and/or Note are not secured by the same property as any other loan held by BBVA Compass.

*Id.* at 68–69. Third, § 6.01(a) of the LSA reads, in relevant part:

(a)     <u>Release</u>. Buyer shall and does hereby fully release, remise, and forever discharge the Seller Parties, from and against any and all claims, . . . causes of action, . . . damages and liabilities of every kind and character arising from or relating to the Borrower, or the Loan Rights founded either in tort, contract or otherwise and the duties arising thereunder, that Buyer had in the past, or now has, or which may hereafter accrue (except those arising under this Agreement).

*Id.* at 73. Fourth, § 2.01(e)(i) of the LSA, titled "Assignment of Litigation," states, in relevant part:

At Closing, . . . Seller shall be deemed to have assigned to Buyer and Buyer shall be deemed to have assumed full responsibility for litigation related to the Loans and involving the Seller in any way, whether now existing or hereafter commenced, including, but not limited to, the litigation listed on Schedule I attached hereto (the "<u>Assigned Litigation</u>"). Upon the Closing, Buyer shall assume sole responsibility and liability for the prosecution and/or defense of the Assigned Litigation and any and all other claims concerning the Loan Rights, whether now existing or hereafter commenced, that are asserted in the Assigned Litigation against any of the Seller Parties concerning the Loan Rights. Buyer shall and does hereby indemnify and hold Seller harmless for and against all such claims.

*Id.* at 66–67.

Stabilis and Compass's relationship began to sour in April of 2013, when the Kauras filed a lawsuit against Compass in California state court, alleging, *inter alia*, that Compass breached the LMA. Doc. 188, Def.'s Br., 11. Because of the indemnification provision in § 2.01(e)(i) of the LSA, Stabilis provided for Compass's defense in the California Action. Doc. 49, Am. Compl., ¶ 51. But

Stabilis did not pay Compass's litigation expenses during an appeal of the California Action, which totaled $101,019.46. *See* Doc. 188, Def.'s Br., 35.

Stabilis claims that it did not know about the LMA when it signed the LSA. Stabilis alleges that Compass had a duty to disclose the LMA in the LSA or beforehand, and that but for this concealment, Stabilis "would not have agreed to purchase the Kaura loan, and therefore was fraudulently induced into entering that agreement . . . ." Doc. 49, Am. Compl. ¶¶ 81, 89. Stabilis alleges that "[b]ased on [Compass's] false representations that no such [LMA] existed and subject to a written reservation of rights pursuant to the Sale Agreement, Stabilis provided a legal defense to Compass in the California Action." Doc. 195, Pl.'s Resp., 7–8. Additionally, Stabilis alleges that throughout the next several months following the execution of the LSA and the California Action, Compass's counsel misrepresented to Stabilis that no signed LMA existed. *Id.* at 8. In August of 2013, Stabilis received notice of a memorandum of the LMA, signed by Compass and the Kauras. *Id.* The memorandum stated that the LMA was not effective until the LMA was signed, and Compass, according to Stabilis, ensured that it was not. *Id.* at 8–10. Finally, however, in late September 2013, and no later than October 7, 2013, Compass confirmed that a signed LMA did in fact exist. *Id.* at 10; Doc. 188, Def.'s Br., 16.

B.     *Procedural History*

On September 22, 2017, Stabilis sued Compass in New York state court. Doc. 1, Notice of Removal, ¶ 1. Compass then removed the suit to the Southern District of New York. *Id.* at 1. The district court in the Southern District of New York then transferred the case to this Court, in the Northern District of Texas. Doc. 24, Transfer Order, 1. Stabilis then filed an amended complaint alleging claims for fraudulent inducement, fraudulent concealment, and unjust enrichment based

on Compass's alleged misrepresentations and concealment of the LMA. Doc. 49, Am. Compl., ¶¶ 80–105.

This Court subsequently dismissed with prejudice the fraudulent-inducement claim based on extra-contractual representations, on the grounds that Stabilis disclaimed any reliance on Compass's extra-contractual representations when it agreed to the disclaimer-of-reliance provision in § 3.02(d) of the LSA. Doc. 77, Order, 14. The Court clarified in a separate order that its holding extended to extra-contractual affirmative misrepresentations and nondisclosures. Doc. 80, Mem. Op. & Order, 2. The Court also dismissed with prejudice Stabilis's unjust enrichment claim because the subject matter of the claim was based on an express agreement—the LSA. Doc. 77, Mem. Op. & Order, 21–22. The Court, however, did not dismiss Stabilis's fraudulent-inducement claim based on nondisclosure of the LMA in the LSA, nor its fraudulent-concealment claim based on Compass's alleged concealment of the LMA after the closing of the LSA. *Id.* at 22.

Compass subsequently brought this Amended Motion for Summary Judgment (Doc. 187). All briefing has been submitted, and the motion is now ripe for review.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & Fr. Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this

requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). But if the non-movant ultimately bears the burden of proof at trial, the summary-judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting an essential element of the non-movant's claim. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 n.10 (5th Cir. 2017).

Once the summary-judgment movant has met this burden, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ( quotation marks omitted). "[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations incorporated and quotations marks omitted). But the court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation and quotation marks omitted). If the non-movant is unable to make the required showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

III.

ANALYSIS

Compass moves for summary judgment on several grounds. As to Stabilis's fraudulent-inducement claim, the Court finds that the disclaimer-of-reliance clause in § 3.02(d) of the LSA is fatal to the reliance element of that claim. The Court **GRANTS** Compass's motion for summary judgment on the fraudulent-inducement claim.

For Stabilis's fraud based on fraudulent concealment, the Court finds that there are genuine disputes of material fact that prevent the Court from granting summary judgment on that claim. The Court **DENIES** Compass's motion for summary judgment on Stabilis's fraud based on fraudulent concealment claim.

Finally, because the Court denies summary judgment on the fraud based on fraudulent concealment claim, the Court also **DENIES** Compass's motion for summary judgment on its breach-of-contract counterclaim.

A.      *Fraudulent Inducement*

The elements of a fraudulent-inducement claim are the same as those for common-law fraud: "(1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). "[F]raudulent inducement arises only in the context of a contract . . . ." *Id.*

Compass argues many grounds for why summary judgment should be granted on Stabilis's fraudulent-inducement claim. Because the Court finds the disclaimer-of-reliance provision argument

dispositive, the Court will only consider that argument.

1.     By signing the LSA, Stabilis disclaimed reliance on all representations and nondisclosures relating to such representations not discussed in § 3.01 of the LSA.

Compass contends that the disclaimer-of-reliance clause in § 3.02(d) of the LSA precludes Stabilis's fraudulent-inducement claim. Doc. 188, Def.'s Br., 20. Compass argues that although the Court did not dismiss Stabilis's fraudulent-inducement claim "premised on nondisclosure of the LMA in the LSA" in a previous order on Compass's motion to dismiss, "[t]he disclaimer-of-reliance clause . . . is not so limited." *Id.* at 21. Section 3.02(d), Compass notes, states that Stabilis will rely "solely on its own investigation and, other than Seller's representations and warranties in Section 3.01 of this Agreement, Buyer has not relied and will not rely upon any oral or written statement or representation by Seller . . . ." *Id.* (citing Doc. 189, Def.'s App., 69).

Compass then notes how since the Court's order on Compass's motion to dismiss, Stabilis's witnesses have admitted that Compass's representations within § 3.01 of the LSA were true. *Id.* at 22. Thus, Compass argues that the representations within § 3.01 cannot be the basis for Stabilis's fraudulent inducement claim. *Id.* And neither can any other representations made by Compass, because Stabilis, according to Compass, disclaimed reliance on any representations not made within § 3.01. *Id.*

In response, Stabilis argues that § 3.02(d) applies only to "affirmative 'oral or written statements or representations,'" and "is silent about nondisclosures or material omissions, as this Court previously held." Doc. 195, Pl.'s Resp., 20 (quoting Doc. 77, Mem. Op. & Order, 14). To Stabilis, that Compass's affirmative representations in § 3.01 were accurate "is irrelevant to this analysis," as a party has "a duty to disclose—irrespective of contractual duties—when a partial

disclosure is misleading or creates a false impression." *Id.* Compass's omission of the fully executed LMA, Stabilis argues, was misleading. *Id.* Stabilis believes that because the "notice of failure" letter to the Kauras was listed as a loan document in Exhibit B, the fully executed LMA was "*a fortiori* a Loan Document . . . ." *Id.* at 20–21. Stabilis believes that this misleading omission "g[ave] rise to the duty to disclose as this Court previously ruled." *Id.* at 20 (citing Doc. 77, Mem. Op. & Order, 9–10).

The Court agrees with Compass, for several reasons. First, despite Stabilis's argument to the contrary, the disclaimer-of-reliance clause in § 3.02(d) is not limited to affirmative statements and representations. This Court previously explained that its "holding [that the reliance provision is enforceable and barred claims based on extra-contractual allegations] applies to alleged extra-contractual affirmative misrepresentations *and nondisclosures*." Doc. 80, Order, 1–2 (emphasis added). "Texas law compel[led] this conclusion," *id.* at 2, because "nondisclosure allegations are simply the converse of . . . affirmative misrepresentations." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 182 (Tex. 1997); *see also Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*, 369 F. Supp. 2d 848, 859 (E.D. Tex. 2004) ("[A]lleged nondisclosures are merely the converse of misrepresentations and are subsumed under any contract language disclaiming reliance on affirmative statements.") (citing *Schlumberger*, 959 S.W.2d at 179–81). Thus, § 3.02(d) necessarily applies to both affirmative misrepresentations and nondisclosures.

Second, § 3.02(d) disclaims reliance on any topic not covered by the representations made in § 3.01. Section 3.02(d) reads, in relevant part, "Buyer has relied and shall rely solely on its own investigation and other than Seller's representations and warranties in Section 3.01 of this Agreement, Buyer has not relied and will not rely upon any oral or written statements or representations by Seller or any of the Seller Parties." Doc. 189, Def.'s App., 69. By this plain

language, then, Stabilis disclaimed reliance on all of Compass's statements or representations except those in § 3.01. *See Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) ("The goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used."). And Compass made four representations in § 3.01:

    (a)    Seller is the owner of the Loan Rights, and Seller shall have the right on the Closing Date to assign the Loan Rights to Buyer, subject to consent of any Participant.

    (b)    As of the [sic] March 4, 2013, the unpaid principal balance of the Loan is $3,850,548.90.

    (c)    To Seller's Knowledge, the Borrower does not have the right to disbursement of additional loan proceeds or future advances with respect to the Note or Loan Documents.

    (d)    The Loan Documents and/or Note are not secured by the same property as any other loan held by BBVA Compass.

Doc. 189, Def.'s App., 68–69. Stabilis admits that Compass's "affirmative representations in 3.01 of the LSA are accurate and not challenged by Stabilis . . . ." Doc. 195, Pl.'s Br., 20. Instead, Stabilis believes that Compass made a material omission when it left the LMA out of Exhibit B's Loan Documents. *Id.* However, § 3.01 makes no representations concerning the accuracy or inclusiveness of Exhibit B's listed documents. *See* Doc. 189, Def.'s App., 68–69. Thus, Stabilis has disclaimed reliance on any representation relating to, or omission within, Exhibit B. Stabilis's fraudulent-inducement claim, then, fails as a matter of law. *See Schlumberger*, 959 S.W.2d at 180 ("[A] disclaimer of reliance may conclusively negate the element of reliance, which is essential to a fraudulent inducement claim.").

<u>2.</u>    <u>This holding is not in Conflict with the Court's previous orders in this case.</u>

In the Court's Order on Compass's Motion to Dismiss, the Court held that "Compass had a duty to disclose the LMA because its disclosure of the notice to the Kauras gave the false impression that there was no executed LMA." Doc. 77, Mem. Op. & Order, 20. Whether there was a duty to disclose is distinct from whether someone relied on a nondisclosure. *See White v. Zhou Pei*, 452 S.W.3d 527, 537 (Tex. App.—Houston [14th Dist.] 2014) (listing duty to disclose and reliance as distinct elements). That there was a duty to disclose the LMA, then, does not negate the effect of the disclaimer-of-reliance clause on Stabilis's fraudulent-inducement claim.

The Court also held that "the disclaimer-of-reliance provision forecloses Stabilis's fraudulent-inducement claim based on Compass's extra-contractual misrepresentations . . . ." Doc. 77, Mem. Op. & Order, 14. The Court, in a footnote, explained that this holding "does not apply to Stabilis's fraudulent-inducement claim premised on nondisclosure of the LMA in the LSA." *Id.* at 14 n.5. In its Order on Compass's Motion for Reconsideration, the Court explained that because the allegation that Compass failed to disclose the LMA in the LSA "arises from the contract . . . the disclaimer-of-reliance provision does not bar it." Doc. 80, Mem. Op. & Order, 2.

Holding, as the Court does now, that the disclaimer-of-reliance provision does indeed bar Stabilis's claim based on Compass's failure to disclose the LMA in the LSA is not inconsistent with this Court's previous orders. At the motion-to-dismiss stage, it would have been inappropriate for the Court to dismiss that claim because facts disclosed during discovery could have revealed that the representations made in § 3.01 of the LSA—representations for which reliance was not disclaimed in the disclaimer-of-reliance clause—were materially misleading with respect to the nondisclosure of the fully executed LMA. The claim, then, satisfied Rule 12(b)(6)'s plausibility threshold.

However, with discovery now having taken place, Stabilis itself has admitted that the affirmative representations made in § 3.01 were true. Doc. 195, Pl.'s Br., 20. And it does not explain how any of the representations in § 3.01 were misleading or omitted any material fact with respect to the existence of the LMA. *See generally* Doc. 195, Pl.'s Br., 19–21. Instead, Stabilis's nondisclosure claim is based on the nondisclosure of the LMA in a provision of the LSA—Exhibit B's Loan Documents—for which there was no representation made in § 3.01. Doc. 195, Pl.'s Br., 20–21. Thus, discovery has shown that there is no genuine dispute of material fact as to whether there was a fraudulent misrepresentation or omission with respect to the LMA's existence, stemming from Compass's representations made in § 3.01. Stabilis disclaimed reliance on the alleged improper disclosure of the LMA in Exhibit B. Therefore, its fraudulent-inducement claim fails as a matter of law. *See Schlumberger*, 959 S.W.2d at 180.

This Court previously held that the disclaimer-of-reliance clause in § 3.02(d) of the LSA was enforceable for all extra-contractual representations. *See* Doc. 77, Mem. Op. & Order, 11–15. As the factors that the Court considered in its enforceability analysis do not attach any significance to whether the representations disclaimed were intra- or extra-contractual, see *Forest Oil Corporation v. McAllen*, 268 S.W.3d 51, 60 (Tex. 2008), this Court's previous holding as to the clause's enforceability applies to intra-contractual representations made outside of § 3.01. For this reason and the reasons stated above, Compass's Amended Motion for Summary Judgment on Stabilis's fraudulent-inducement claim is **GRANTED**. That claim is hereby **DISMISSED**.

B.      *Fraud Based on Fraudulent Concealment*

Stabilis also brings a cause of action for fraud based on fraudulent concealment, alleging that Compass's post-sale misrepresentations and omissions concerning the LMA resulted in Stabilis

"incurr[ing] the additional legal expenses of protracted litigation in the California Action" as Stabilis

"would have settled that action before trial" if it knew about the LMA. Doc. 49, Am. Compl., ¶ 97.

The elements of fraud by nondisclosure[2] are as follows:

(1) the defendant failed to disclose material facts to the plaintiff that the defendant had
a duty to disclose; (2) the defendant knew the plaintiff was ignorant of the facts and the
plaintiff did not have an equal opportunity to discover the facts[;] (3) the defendant was
deliberately silent when the defendant had a duty to speak; (4) by failing to disclose the
facts, the defendant intended to induce the plaintiff to take some action or refrain from
acting; (5) the plaintiff relied on the defendant's nondisclosure; and (6) the plaintiff was
injured as a result of acting without that knowledge.

*White*, 452 S.W.3d at 537 (citing *Frankoff v. Norman*, 448 S.W.3d 75, 84 (Tex. App.—Houston [14th

Dist.] 2014, no pet.)).

Compass has five arguments as to why Stabilis's fraudulent-concealment claim fails at

summary judgment: (1) the fraudulent-concealment claim is barred by the statute of limitations; (2)

Stabilis and the Kauras actually agreed on a settlement, but the Kauras refused to close; (3) Stabilis

knew of the LMA during the California litigation; (4) Compass's alleged post-closing

misrepresentation did not cause any damage to Stabilis because Stabilis agreed in the LSA to bear

the risk and expense of, and liability for, the California Action; and (5) Stabilis released Compass

from future torts in the LSA. Doc. 187, Def.'s Br., 32–35. The Court disagrees and **DENIES**

summary judgment on the fraudulent-concealment claim.

1.      There is a factual dispute as to when the statute of limitations accured.

Compass believes that Stabilis's fraudulent-concealment claim is time barred, and that

_____

[2]Stabilis's second cause of action is "fraudulent concealment." Doc. 49, Second Am. Compl., 24.
However, "fraudulent concealment" is a defense to the statute of limitations. *See BP Am. Prod. Co. v.
Marshall*, 342 S.W.3d 59, 67 ("The second doctrine that may extend the limitations period in this case is
fraudulent concealment, an equitable doctrine that, unlike the discovery rule, is fact-specific."). Thus, this
Court assumes that Stabilis meant "fraud by nondisclosure."

Stabilis could not have justifiably relied on any representation by Compass that there was not a signed LMA. *Id.* at 32–33. These arguments center around the same basic contention: that Stabilis knew, or should have known, about the signed LMA in August 2013, if not earlier. *See id.* at 18–19, 40. Stabilis filed this action on September 22, 2017. *See* Doc. 1-1, Summons.

In Texas, the statute of limitations for fraud claims is four years. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4). Thus, the statute of limitations bars any fraud-by-nondisclosure claim that accrued before September 27, 2013. Typically, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008) (quoting *S.V. v. R.V.*, 933 S.W.2d, 1, 4 (Tex. 1996)). However, "[t]he statute of limitations for causes of action based on fraud does not commence until the fraud is discovered or until plaintiff acquires such knowledge as would lead to the discovery of the fraud if reasonable diligence was exercised." *Kelly v. Dorsett*, 581 S.W.2d 512, 513 (Tex. App.—Dallas 1979) (citing, *inter alia*, *Kelley v. Rinkle*, 532 S.W.2d 947, 948 (Tex. 1976)).

To demonstrate that the statute of limitations commenced prior to September 22, 2013, Compass points to six things that happened prior to September 22, 2013, that should have put Stabilis on notice of the signed LMA. To Compass, Stabilis:

> (a) [was] made aware of the existence of the LMA by the notice that Compass had declared the LMA void; (b) [was] made aware of the Kauras' lawsuit alleging breach of and attaching an unsigned copy of the LMA; (c) received a signed Memorandum of LMA incorporating by reference the LMA; (d) internally discussed and analyzed potential misrepresentation claims against Compass; (e) threatened Compass with litigation; and (f) began strategizing in the California litigation regarding 'options available to Stabilis in light of modification agreement.'"

Doc. 188, Def.'s Br., 19. However, as Stabilis notes in its response, each time Stabilis had its doubts

as to the existence of a signed LMA, it asked Compass whether a signed LMA existed. Doc. 195, Pl.'s Resp., 16. For example, when the Kauras filed suit in California, Stabilis' counsel asked Compass whether an LMA had been signed. *Id.* And after Stabilis received the signed Memorandum of the LMA in August of 2013, it again asked Compass whether a signed LMA existed. *Id.* Each time Compass denied the signed LMA's existence. *Id.* Additionally, the signed memorandum, Stabilis notes, contained an attached LMA that itself was unsigned. *Id.* at 18. Finally, Stabilis points out that Compass's allegation that it called Stabilis to tell it of the signed LMA in September or October of 2013 is too vague, "as [Compass] cannot pinpoint the actual date of that call . . . ." *Id.*

Stabilis has demonstrated that it took actions in response to its suspicions about a concealed and signed LMA. The Court concludes that in light of these actions, Stabilis has raised a genuine dispute of material fact as to whether these actions were reasonably diligent, as to delay the accrual of the statute of limitations. Only when there are no genuine disputes of fact as to reasonable diligence may the Court render summary judgment on the statute-of-limitations issue. *Wakefield v. Bevly*, 704 S.W.2d 339, 345 (Tex. App.—Corpus Christi 1985). Summary judgment on this ground is thus **DENIED**.

> 2. The agreed-upon settlement does not necessitate dismissal of Stabilis's fraudulent-concealment claim.

Compass argues that because Stabilis and the Kauras actually agreed on a settlement, Compass's alleged fraudulent concealment of the LMA did not result in any harm to Stabilis. Doc. 187, Def.'s Br., 32–33. Specifically, Compass points to the fact that Stabilis's lawyer, Joseph Tuso, testified that Stabilis and the Kauras agreed on a settlement of the California Action for $3.5 million, but that the Kauras refused to close on the settled amount. *Id.* at 32. Thus, according to Compass,

Stabilis's allegation that Compass "deprived it of an opportunity to settle the lawsuit simply is inaccurate and cannot serve as the basis of Stabilis's [fraudulent-concealment] claim."

Stabilis points out in its response, however, that Mr. Tuso testified that at the time of the original settlement discussions, Stabilis believed that "the Kauras had access to the financial resources necessary to consummate settlement for the amounts that were under discussion." Doc. 195, Pl.'s Resp., 32. Mr. Tuso's testimony indicates, therefore, that had Stabilis been aware of the signed LMA at the beginning of the settlement discussions, it would have decided to settle the California Action with the Kauras at the Kauras's initial settlement offer—$3.2 million—or even less. *Id.* Perhaps then, Stabilis implies through this argument, the Kauras would not have balked at the eventual $3.5 million agreement. *See id.* at 32–33.

Regardless of the plausibility of this argument, the Court finds that at this time, a reasonable juror could accept Stabilis's argument. The Court concludes that Tuso's beliefs, at this time, are inadmissible evidence that cannot be considered at the summary judgment stage, despite Compass's arguments to the contrary. Doc. 199, Def.'s Reply, 15. It is possible that Mr. Tuso can testify at trial, and if he does, his testimony might be the basis for a reasonable juror's conclusion on causation. Summary judgment on this ground is thus **DENIED**.

3.     <u>Stabilis's knowledge of the signed LMA by October 7, 2013</u>

Next, Compass points out that Stabilis received a signed copy of the Memorandum of LMA on August 27, 2013. Doc. 187, Def.'s Resp., 33. Compass argues that this means that "even if Stabilis rejected a settlement offer in late 2013," because it already knew of the signed Memorandum of the LSA, Stabilis "did not justifiably rely on an alleged representation by Co[mpass] that Compass and the Kauras had not agreed to modify the loan." *Id.* Compass also points to the fact that by October

7, 2013, Compass told Stabilis that the signed LMA existed, *id.*, and that settlement discussions in the California Action did not start until November 2013. *See* Doc. 199, Def.'s Reply, 18. So too Compass notes, "Stabilis' settlement decisions after that date were made with full knowledge of the" signed LMA. *Id.*

But Stabilis responds that Mr. Tuso testified that he did not learn about the signed LMA until September of 2014. Doc. 195, Pl.'s Resp., 12. Stabilis also points to the deposition of two Compass employees/attorneys who did not recall the exact date on which Compass revealed to Stabilis that a signed LMA existed. *Id.* at 12–13. For example, one employee "did nothing to correct the Compass/Stabilis demurrer filings in the California Action as late as May 2014 that continued to deny the LMA had been signed." *Id.* at 12–13. Thus, there is a genuine dispute of material fact as to whether Stabilis knew of the signed LMA before it entered into settlement discussions with the Kauras.

Compass perhaps acknowledges this in its reply, when it states that the Court "may assume, for purposes of the present motion" that the October 2013 notice of a signed LMA did exist "in light of the facts" that show Stabilis should have known about the signed LMA. *See* Doc. 199, Def.'s Reply, 16 n.9. But as the Court previously explained in its discussion on the statute of limitations, a reasonable juror could conclude that such events did not put Stabilis on sufficient notice that a signed LMA existed. Therefore, the Court **DENIES** summary judgment on this ground.

4. <u>Compass has not shown that the assumption-of-liabilities or indemnity clause preclude Stabilis's fraudulent-concealment claim as a matter of law.</u>

Compass argues that Stabilis cannot prove that Compass's actions were the cause-in-fact of Stabilis's decision to reject a settlement offer because "Stabilis assumed all of Compass' 'liabilities and

obligations of every nature whatsoever with respect to the Loan and the Loan Documents as of the Closing Date', and Stabilis agreed to indemnify Compass in all future litigation related to the Loan." Doc. 187, Def.'s Br., 33–34.

However, this argument is the same one, without any real difference, that the Court rejected in its order on Compass's motion to dismiss. *See* Doc. 77, Mem. Op. & Order, 17. What was said in the Court's order then can be said now: "Compass's argument that Stabilis's agreement to assume Compass's liabilities and indemnify it in future litigation [in the LSA] bars Stabilis's fraudulent-concealment claim is minimal at best; Compass does no more than cite to the relevant LSA provision." *Id.* "The Court declines to make Compass's argument for it and thus finds that the LSA provisions Compass cites do not bar Stabilis's fraudulent-concealment claim." *Id.* Therefore, the Court **DENIES** summary judgment on this ground.

     5.     <u>Compass has not shown that the release provision precludes Stabilis's fraudulent-concealment claim as a matter of law.</u>

Section 6.01(a) of the LSA reads, in relevant part,

     (a)     <u>Release</u>. Buyer shall and does hereby full release, remise, and forever discharge the Seller Parties, from and against any and all claims, . . . causes of action, . . . damages and liabilities of every kind and character arising from or relating to the Borrower, or the Loan Rights founded either in tort, contract or otherwise and the duties arising thereunder, that Buyer had in the past, or now has, or which may hereafter accrue (except those arising under this Agreement).

Doc. 196, Pl.'s App., 14. Compass believes that the release provision is enforceable, that Stabilis's fraudulent-concealment claim "does not arise under the LSA," and therefore that Stabilis is barred from bringing the claim. Doc. 188, Def.'s Br., 34.

The only place in which Stabilis directly responds to this claim is in a footnote in its response, where it states that "[Compass's] repetitive argument concerning the contractual release provision

. . . fails with respect to Stabilis's fraudulent concealment claim for the same reasons it fails against the fraudulent inducement claim." Doc. 195, Pl.'s Resp., 33 n.7. Looking at Stabilis's arguments with respect to the contractual release provision's applicability to the fraudulent-inducement claim, Stabilis has two arguments. First, Stabilis believes that its cause of action does arise under the LSA and therefore the contractual release provision does not apply. *Id.* at 29. It points to this Court's decision on Compass's motion to dismiss, where the Court explained that "[b]ecause Stabilis's claim that Compass fraudulently induced it into signing the LSA by concealing the LMA plainly arises under the LSA, the release provision does not bar Stabilis' claim." *Id.* (citing Doc. 77, Mem. Op. & Order, 11 n.2). Second, Stabilis claims that the release clause, if as broad as Compass claims that it is, violates "Texas' fair notice requirements." *Id.* at 30 n.6.

At this time, the Court is not prepared to conclude that Stabilis's fraudulent-concealment claim "does not arise under the LSA."[3] Compass's own arguments, in fact, demonstrate that there is a genuine dispute of material fact on this issue. For example, as a defense to the fraudulent-concealment claim, Compass argues in the alternative that Stabilis did not suffer any damages from any concealment of the LMA because Stabilis "assumed all of Compass' 'liabilities and obligations of every nature whatsoever with respect to the Loan and the Loan Documents as of the Closing Date', and Stabilis agreed to indemnify Compass in all future litigation related to the Loan." Doc. 188, Def.'s Br., 33–34 (citing LSA §§ 2.01(a) and (e)(i), respectively)). Thus, conceivably, the fraudulent-concealment claim could "arise under the LSA." Doc. 188, Def.'s Br., 34.

Additionally, in its breach-of-contract counterclaim, Compass argues that in § 2.01(e)(i) of

---

[3]For this reason, the Court will not analyze whether the release clause violates Texas's fair-notice requirements.

the LSA, Stabilis agreed to pay for the litigation expenses related to the California Action. *Id.* at 35. Stabilis's fraudulent-concealment claim, however, alleges that during the California Action for which it was required to indemnify Compass under the LSA, Compass fraudulently concealed the signed LMA. *See* Doc. 49, Am. Compl., ¶¶ 73, 92–99. Thus, even under Compass's version of events, the fraudulent-concealment claim possibly "arise[s] under the LSA." Doc. 189, Def.'s Br., 34. The Court **DENIES** summary judgment on this ground.

C.    *Compass's Counterclaim For Breach of Contract*

Next, Compass seeks summary judgment on its breach-of-contract/indemnity counterclaim. Doc. 188, Def.'s Br., 35–36. Compass argues that under § 2.01(e)(i) of the LSA, Stabilis agreed to pay for the litigation expenses related to the California Action. *Id.* at 35. Despite this, Compass explains, Stabilis notified Compass that it would refuse to pay the attorneys' fees Compass would incur in the appeal of the California Action. *Id.* Compass had to pay $101,019.45 in attorney's fees as a result. *Id.*

Compass states that to its "knowledge, Stabilis['s] sole defense to Compass' indemnity claim is based on its allegation that Compass fraudulently induced Stabilis to execute the LSA." *Id.* And because Compass believes that the fraudulent inducement claim fails as a matter of law, it argues that the Court should grant Compass summary judgment on its counterclaim. *Id.* at 35–36.

In response, Stabilis does argue that "[b]ecause summary judgment is not warranted on Stabilis' fraud claims . . . summary judgment must also be denied on the counterclaim as well." Doc. 195, Pl.'s Resp., 34. But Stabilis contends that other reasons also preclude summary judgment. *Id.* Specifically, Stabilis argues that there is a fact issue as to whether the LMA is a Loan Document containing Loan Rights. *Id.* Stabilis contends that under the LSA, Compass is entitled to

indemnification only for litigation "concerning the Loan Rights." *Id.* at 35 (quotation marks omitted). Thus, to Stabilis, if the jury finds "that the LMA is not a Loan Document, that finding would preclude Compass' indemnification claim." *Id.*

To prevail on a breach-of-contract claim, Compass must prove "(1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach." *In Re Staley*, 320 S.W.3d 490, 499 (Tex. App.—Dallas, 2010, no pet.).[4]

> Section 2.01 of the LSA reads, in relevant part:
>
> Seller shall be deemed to have assigned to Buyer and Buyer shall be deemed to have assumed full responsibility for litigation related to the Loans and involving the Seller in any way, whether now existing or hereafter commenced, including, but not limited to, the litigation listed on Schedule I attached hereto (the "<u>Assigned Litigation</u>"). Upon the Closing Buyer shall assume sole responsibility and liability for the prosecution and/or defense of the Assigned Litigation and any and all other claims concerning the Loan Rights, whether now existing or hereafter commenced, that are asserted in the Assigned Litigation against any of the Seller Parties concerning the Loan Rights.

Doc. 196, Pl.'s App, 7. The LSA states that Stabilis is solely responsible for "Assigned Litigation *and* any and all other claims concerning the Loan Rights . . . ." *Id.* (emphasis added). It need not matter whether the LMA concerns the Loan Rights, as Stabilis also had to assume sole responsibility for "Assigned Litigation." Assigned Litigation is defined as "litigation related to the Loans and involving the Seller in any way . . . ." *Id.* The California litigation involved the Seller—Compass—and of course involved the loan at issue—the Kauras loan. Thus, the California litigation was Assigned Litigation, and Stabilis was responsible for the litigation, as this Court has previously explained. *See*

---

[4]As this is a counterclaim, for purposes of clarity, Compass is considered the plaintiff, while Stabilis, the defendant.

Doc. 78, Mem. Op. & Order, 4 ("In the LSA, Stabilis assumed responsibility for Compass's litigation of the Kauras's claims involving the Kaura loan."). It is undisputed that it did not take full responsibility for this litigation—leaving $101,019.46 for Compass to pay. Doc. 188, Def.'s Br., 35. Thus, by the plain language of the contract, Stabilis's second argument fails.

So, the question becomes whether Compass's alleged fraudulent concealment after the contract—which survived Compass's motion for summary judgment—could vitiate Stabilis's duty to indemnify. It is true that fraud *in the inducement* of a contract can vitiate duties under a contract. *See Schlumberger*, 959 S.W.2d at 179 ("[T]o vitiate the contract, the fraud must be such that it 'prevents the coming into existence of any valid contract at all.'") (quoting *Distribs. Inv. Co. v. Patton*, 110 S.W.2d 47, 48 (Tex. 1937))). Stabilis's fraudulent-inducement claim has been dismissed. But can alleged fraudulent concealment that happened *after* the contract was signed vitiate duties agreed to under a contract? This Court concludes that it may. Compass has not pointed the Court to any authority that holds that a party can recover on a breach-of-contract theory, when the reason for the alleged breach was that the party seeking to recover fraudulently misrepresented facts relevant to the duty allegedly breached. And because the Court declines to grant Compass summary judgment on Stabilis's fraudulent-concealment claim, it **DENIES** summary judgment on its counterclaim.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Compass's Motion for Summary Judgment on Stabilis's fraudulent-inducement claim. However, the Court **DENIES** Compass's Motion for Summary Judgment on Stabilis's fraud based on fraudulent-concealment claim and Compass's breach-of-contract counterclaim.

SO ORDERED.

SIGNED: January 30, 2020.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE